IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRADEN O.**, *et al.* | : | CIVIL ACTION |
|     *Plaintiffs* | : | |
| | : | NO. 16-0071 |
| **v.** | : | |
| | : | |
| **WEST CHESTER AREA SCHOOL DISTRICT** | : | |
|     *Defendant* | : | |

| | | |
|---|---|---|
| **WEST CHESTER AREA SCHOOL DISTRICT** | : | CIVIL ACTION |
|     *Plaintiff* | : | |
| | : | NO. 16-0758 |
| **v.** | : | |
| | : | |
| **B.O.**, *et al.* | : | |
|     *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                             JULY 5, 2017

# MEMORANDUM OPINION

**INTRODUCTION**

       By Order dated September 19, 2016, [ECF 15], the parties' joint motion to consolidate the following matters was granted: *Braden O., et al. v. West Chester Area School District*, Civ. No. 16-0071, and *West Chester Area School District v. B.O., et al.*, Civ. No. 16-0758.

       Presently, before this Court are *cross-motions for judgment on the administrative record* filed by the West Chester Area School District (the "School District")[1], [ECF 20], and by B.O. by and through his parents, B.O. and K.O., ("Parents")[2], [ECF 22], which address the School District's appeal of three adverse orders/decisions issued in the underlying due process litigation

---

[1]     Filed under Civil Action No. 16-0758.

[2]     Filed under Civil Action No. 16-0071.

brought by Parents pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1401 *et seq.*, and Parents' action, as the prevailing party, to recover attorneys' fees and costs in said litigation. The issues raised in the parties' respective motions have been fully briefed and are ripe for disposition. For the reasons stated herein, the School District's motion for judgment on the administrative record is granted, Parents' motion is denied, and this matter is remanded to the administrative hearing officer.

**BACKGROUND[3]**

This matter involves a minor student, B.O. ("Student"), who has been diagnosed with autism and related impairments, including, intellectual disability, anxiety, obsessive compulsive disorder ("OCD"), and attention deficient hyperactivity disorder ("ADHD"), and who has received special education services since the age of seven. In August 2014, when Student was seventeen years old, Parents moved from Mt. Diablo Unified School District ("Mt. Diablo"), in California, to the West Chester Area School District, in West Chester, Pennsylvania. A month prior to the move to West Chester, Parents contacted by email Dr. Leigh Ann Ranieri, the West Chester School District's Director of Pupil Services, to discuss Student's educational needs and to request that the School District continue Student's existing services, including a residential placement.[4] On that same day, Dr. Ranieri responded to Parents' email as follows:

> Because special education regulations vary from state-to-state, an evaluation will need to be conducted to determine specific IEP

---

[3] The facts are taken from the parties' respective filings, and are largely undisputed, as they relate to this Court's decision herein. Any factual disputes, to the extent relevant, are noted.

[4] According to Parents, the state of California required "parental share" with respect to the residential portion of Student's placement. Parents purportedly disputed having to pay any parental share at all, contending that the California school district was obligated to fully fund Student's residential program. However, Parents ultimately agreed to pay half of the residential program in order to avoid a due process hearing.

> needs based on Pennsylvania regulations. In the interim, we will implement the California IEP to the extent possible. We're responsible for offering a program in the least restrictive environment and there are many options available between a student's home school and residential placement. The IEP team will make a recommendation based on the individual needs of your son.
>
> A very restrictive option is an Approved Private School such as Camphill. While school districts don't make residential recommendations or approvals, the district is responsible for the school portion of the tuition when a student attends an Approved Private School (APS). I've attached a list of APS in Pennsylvania which might serve as a resource for you.
>
> Best wishes as you decide on your new home! Please contact me once you've made a final recommendation.

(Administrative Record ("A.R.") Ex. 9, P-38).

On September 8, 2014, Parents registered Student with the West Chester Area School District, and provided the School District with a copy of Student's June 11, 2014 Mt. Diablo individualized education program ("IEP"). On September 22, 2014, and October 9, 2014, the School District staff met with Parents to discuss Student's educational program and placement. On October 9, 2014, the School District issued a Notice of Recommended Educational Placement ("NOREP"), (A.R. Ex. 8, HO-1 at pp. 38-41), indicating therein that its purpose was to "implement Out-of-state IEP pending completion of initial evaluation." (*Id*. at p. 38). The NOREP described the School District's proposed action as follows:

> To implement the California IEP dated June 1, 2014 in the autistic support program at the Child Career and Development Center ("CCDC") pending completion of an initial evaluation to determine special education eligibility in the Commonwealth of Pennsylvania and to determine educational needs.

(*Id*.). Although the School District noted Parents' opinion that Student required a residential placement, it indicated that the "IEP team will re-visit [Student's] level of educational need upon completion of the multidisciplinary team evaluation proposed to the parents on October 9, 2014."

(*Id*. at p. 39). On October 17, 2014, Parents rejected the School District's NOREP and insisted that Student "needs a residential placement." (*Id*. at p. 40).

On November 19, 2014, Parents filed a Due Process Complaint Notice. (A.R. Ex. 10, S-22). In the notice, Parents alleged that:

> School District has refused to implement a residential placement in Pennsylvania pending evaluation or other due process procedures. The day placement the District has offered is not appropriate educationally. Without a residential placement, [Student] cannot receive FAPE.

(*Id*.). As a "Proposed Resolution," Parents indicated "School District will honor [Student's] pendent placement pursuant to 20 U.S.C. 1414(d)(2)(C)(i)(II)." (*Id*.). This recognition specifically invoked the *interstate transfer provision*, discussed below.

### *The Hearing Officer's Orders/Decisions*

As a result of Parents' complaint, a due process hearing was scheduled. During the administrative proceedings, the Hearing Officer issued three separate orders/decisions, each of which is the subject of the School District's appeal before this Court. The first decision involved Parents' pre-hearing motion filed on December 30, 2014, seeking an order to maintain Student's residential placement during the pendency of the due process proceedings. (A.R. Ex. 8, HO-1 at pp. 8-14). By Memorandum and Order dated January 18, 2015 (the "Interim Pendency Ruling"), the Hearing Officer granted Parents' motion, thus, requiring the School District to pay for Student's day school and residential placement during the pendency of the due process proceedings. (*Id*. at pp. 1-6). In its decision, the Hearing Officer repeatedly referred to and applied the "pendency" and "stay-put" provisions and principles of 20 U.S.C. §1415(j) (hereinafter, the "pendency/stay-put provision"). (*Id*.).

On June 22, 2015, Parents filed a second pre-hearing motion to compel the School District to fund Student's Extended School Year services ("ESY"). (A.R. Ex. 8, HO-2 at pp. 2-3). In support of the motion, Parents again relied on the pendency/stay-put provision. (*Id*.). On July 2, 2015, the Hearing Officer issued a second interim order granting Parents' motion, and directed the School District "to honor its recognized obligation to fund Student's pendent program at the Oak Hill School for the summer of 2015, without any further documentation of Student's need for ESY services in 2015." (*Id*. at p. 1).

On July 21, July 23, and October 16, 2015, the Hearing Officer held evidentiary hearings on the merits of Parent's due process complaint.[5] (A.R. Exs. 5-7). On November 20, 2015, the Hearing Officer issued a final decision finding that the School District was obligated to provide Student a residential program as part of Student's statutorily-required free and appropriate public education. (A.R. Ex. 2).

In its appeal to this Court, the School District contends that each of the Hearing Officer's above-described orders/decisions is erroneous, as a matter of law, because the Hearing Officer applied the "pendency" or "stay-put" provision of the IDEA, instead of the applicable interstate transfer provision found in 20 U.S.C. §1414(d)(2)(C)(i)(II) (hereinafter, the "interstate transfer provision").

---

[5]  At the time of the due process hearing, Parents had not brought Student to Pennsylvania to permit the West Chester School District an opportunity to evaluate him. Parents understandably chose not to relocate him to Pennsylvania from his known-environment in California until his education program and services, whatever they might ultimately be, were settled and in place. As a result, at the time of the due process hearing, the School District had not evaluated Student for purposes of formulating a Pennsylvania IEP.

**LEGAL STANDARD**

As noted, this action was brought under the *Individuals with Disabilities Education Act of 1997* ("IDEA"), 20 U.S.C. §1400 *et seq.*, which requires institutions that receive federal education funding to provide all children with disabilities with a "free and appropriate public education" or "FAPE." 20 U.S.C. §1400(d)(1)(A); §1412(a)(1)(A); *Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, 137 S. Ct. 988, 993 (2017); *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A free appropriate public education "includes both 'special education' and 'related services.'" *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. §1401(26), (29)).

Once a disabled child is identified, the school district must develop an "individualized education program" ("IEP") for the child that is "reasonably calculated to enable [the student] to make progress appropriate in light of the child's circumstances." *Endrew*, 137 S. Ct. at 1001; *see also* 20 U.S.C. §1414(d) (defining individualized education program).[6] "The adequacy of a given IEP turns on the unique circumstances of the child for who it was created." *Id*. It must "set out a plan for pursuing academic and functional advancement." *Id*. at 999 (citing 20 U.S.C. §1414(d)(1)(A)(i)(I)-(IV)). Although the state is not required to "maximize the potential of every handicapped child," it must provide an education that confers a "meaningful benefit" to each child. *Ridley School Dist., v. M.R*. 680 F.3d 260, 268 (3d Cir. 2012). The benefit must be substantial, not minimal. *Endrew F.*, 137 S. Ct. at 1001. The core of the IDEA is the collaborative process between parents and schools officials to fashion the IEP. *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. §1414). This collaboration among the parents and educators ensures careful consideration of the child's individual circumstances. *Id*.

---

[6] The IEP is a "written statement for each child with a disability" that includes a statement of the child's: (1) present levels of achievement and performance; (2) measurable annual goals; and (3) the special education and supplementary aids and services to be provided to the child, as well as other details regarding the child's educational program. 20 §U.S.C. §1414(d)(1)(A)(I-IV).

If parents believe that an IEP fails to provide their child with a FAPE, they may seek an administrative "impartial due process hearing." 20 U.S.C. §1415(f). "Any party aggrieved by the findings and decision" made in the administrative proceeding "shall have the right to bring a civil action" in state or federal court. 20 U.S.C. §1415(i)(2)(A). In such appellate circumstances, the district court shall review the records of the administrative proceedings, hear additional evidence at the request of a party and, based on a preponderance of the evidence, grant such relief as it deems appropriate. 20 U.S.C. §1415(i)(2)(C). In making its determination, the district court must give "due weight" to the hearing officer's decision. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982). The Third Circuit Court of Appeals has defined "due weight" as requiring a district court to conduct a "modified *de novo* review" of the administrative proceedings. *Shore Reg. High Sch. Bd. of Educ. v. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004); *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Courts are not free to "substitute their own notions of sound education policy for those of the educational agencies they review." *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 757 (3d Cir. 1995) (citing *Rowley,* 458 U.S. at 205-06). A district court reviewing an administrative fact-finder's conclusions must defer to such factual findings unless the court identifies contrary non-testimonial evidence in the record or explains that the record read in its entirety compels a different conclusion. *S.H.*, 336 F.3d at 270. The district court's review of a hearing officer's application of legal standards and conclusions of law, however, requires no deference to the administrative hearing officer's legal determinations; rather, they are subject to plenary review. *Id.* at 271; *Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999).

**DISCUSSION**

As noted, the School District challenges three orders/decisions of the Hearing Officer; two interim orders and the final FAPE order. Specifically, the School District contends that when issuing these orders, the Hearing Officer erred, as a matter of law, in applying the so-called "stay-put" or "pendency" provision instead of the applicable "interstate transfer" provision. The School District further argues that this erroneous application of the incorrect provision permeates throughout the reasoning for each of the orders/decisions issues and, therefore, requires reversal.

Parents, however, argue that the only issue before this Court is whether Student requires residential placement as part of Student's FAPE since this contention was the only issue litigated during the due process hearing. While Parents are correct that the ultimate issue of the due process hearing was the residential placement, the thrust of the School District's appellate argument centers on the Hearing Officer's application of the erroneous standard and/or improper law. This Court agrees that the application of the wrong provision of the IDEA was a critical error.

Nevertheless, Parents argue that the School District has waived this interstate transfer provision argument by not timely raising it before the Hearing Officer. Parents are incorrect. The administrative record is replete with references to the interstate transfer provision, even by Parents themselves who expressly referred to and cited the interstate transfer provision in their due process complaint and in their motion for a stay-put order. (*See* A.R. Ex. 9, P-1 at p. 5) ("School District will honor [Student's] pendent placement pursuant to 20 U.S.C. §1414(d)(2)(C)(i)(II)."); (A.R. Ex. 8, HO-1 at p. 13) (quoting the interstate transfer provision). In addition, the Hearing Officer cited the interstate transfer provision (though, as discussed below, did not apply it) in the various orders/decisions. (*See* A.R. Ex. 8, HO-1 at pp. 1-6; Ex. 2).

The School District also cited to the interstate transfer provision in its written closing statement submitted after the three days of hearings on Parents' due process complaint, arguing for its application and submitting that the interstate transfer provision required *only* that the School District initially provide Student with educational services "comparable to those described in the previously held IEP," *i.e.*, the Mt. Diablo IEP that was in place at the time of the transfer. (*See* A.R. Ex. 4). Since Parents raised the interstate transfer provision in their own filings, Parents cannot reasonably argue that they were not on notice of the issue or that the issue was not raised. As such, Parents' argument that the interstate transfer provision issue was waived is without merit.

Besides arguing that the School District waived its current interstate transfer provision argument, Parents provide little, if any, argument to support the Hearing Officer's application of the pendency/stay-put provision rather than the interstate transfer provision.[7] Notwithstanding, when considering the arguments posed by the parties, this Court has looked to the plain language of both provisions, particularly the interstate transfer provision, 20 U.S.C. §1414(d)(2)(C)(i)(II), as well as the recent persuasive, although unpublished, opinion of the Third Circuit Court of Appeals in *J.F. v. Byram Township Bd. of Educ.*, 629 F. App'x 235 (3d Cir. 2015), which re-affirmed the Court's published opinion in *Michael C. ex rel. Stephen C. v. Radnor Twp. School Dist.*, 202 F.3d 642 (3d Cir. 2000).

---

[7] Though Parents do not argue that the Hearing Officer was correct in applying the pendency/stay-put provision rather than the interstate transfer provision, they do argue that the outcome would have been the same under either provision. Because the Hearing Officer is in the best position to make this initial determination, this Court will remand this matter to the Hearing Officer to make this determination in the first instance.

The interstate transfer provision provides as follows:

> **(II) Transfer outside of State**
>
> In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in another State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency conducts an evaluation pursuant to subsection (a)(1), if determined to be necessary by such agency, and develops a new IEP, if appropriate, that is consistent with Federal and State law.

20 U.S.C. §1414(d)(2)(C)(i)(II). By its clear and unambiguous terms, this provision, rather than the pendency/stay-put provision, applies to the matter since Student undisputedly transferred from a school district in California to a new school district in Pennsylvania within the same academic year.

Notably, the interstate transfer provision differs from the pendency/stay-put provision in significant respects. The pendency/stay-put provision, 20 U.S.C. §1415(j), provides:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

Unlike the interstate transfer provision, the pendency/stay-put provision requires that a student remain in his/her "then-current educational placement. . . ." *Id*. The interstate transfer provision does not contain this language, but rather requires that a transferring student be provided "a free appropriate public education, ***including services comparable to those described in the previously held IEP*** . . . ." 20 U.S.C. §1414(d)(2)(C)(i)(II) (emphasis added). The interstate transfer provision, unlike the pendency/stay-put provision, also requires that these "comparable"

10

services be provided "until" the school district conducts an evaluation of the transferring student and develops a new IEP that is compliant with both federal law and the law of the state in which the new school district is situated. *Id*. As such, the analysis and applicable procedures under each provision are different.

In *Michael C.*, 202 F.3d 642, the Third Circuit Court of Appeals held that pendency or stay-put principles do not apply in situations where a student transfers from a school district in one state to a school district in another state. The *Michael C.* matter is a case involving the transfer of a disabled student from a school district in Washington, D.C. to a school district in Pennsylvania, and the attempt of that student's parents to compel the Pennsylvania school to implement a private school placement under the IDEA's pendency/stay-put provision. *Michael C.*, 202 F.3d. at 645. The Third Circuit therein rejected the parents' argument and, in doing so, recognized Congress' intent to leave primary responsibility for developing and implementing educational standards with the states:

> [b]ecause Congress left primary responsibility for providing a FAPE and for implementing the IDEA to the states, we believe it unlikely that Congress intended the stay-put provision . . . to impose a requirement on states that they must implement an IEP established in another state without considering how consistent that IEP is with the policies and mandates of the student's new residential state."

*Id*. at 650. In addition, the Court explained that the pendency/stay-put provision and principles only prevent unilateral action by the local educational agency ("LEA"); they do not apply to a parent's unilateral decision to change a student's educational placement:

> where a parent unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures, the protections of the stay-put provision are inoperative until the state or local educational authorities and the parents agree on a new placement. *See*

> *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996).
> Only once state authorities and parents have reached such
> agreement does a "then-current educational placement" come into
> existence. *Id*. In the instant case, it is Michael's father who
> unilaterally removed Michael from the LAB School when he
> moved the family to Radnor Township. Neither Washington
> educational authorities nor Pennsylvania authorities played any
> role in this decision. The plaintiffs now claim that upon moving to
> Pennsylvania, Radnor should have placed Michael at the Hill Top
> School rather than at Radnor High. However, his father never
> reached any agreement with Radnor or with other Pennsylvania
> educational authorities that Michael should be placed in a
> segregated, private school. Therefore, Michael had no "then-
> current educational placement" in the Commonwealth of
> Pennsylvania, and the stay-put provision provides no relief for
> him.

*Id*. at 651.

Notably, *Michael C.* was decided prior to the enactment of the interstate transfer provision at issue here. However, in rendering its decision, the Third Circuit relied upon a policy memorandum from the United States Department of Education's Office of Special Education Programs which provided: "when a disabled student moves from one state to another, the new state of residence is not required to adopt and implement the most recent IEP developed for the student by the previous state of residence." *Id*. at 647. The interstate transfer provision, which essentially codifies this policy, was later added to the IDEA by Congress in 2004.[8]

---

[8] In *J.F.*, 629 F. App'x 235, the Court of Appeals relied on its previous decision in *Michael C.*, 202 F.3d 642 (3d Cir. 2000), to reject the parents' invocation of the pendency/stay-put provision and principles where the parents had unilaterally transferred their student from one school district to another. *Id*. at 238. The disabled student in *J.F.* voluntarily moved from one school district in New Jersey (the "Westwood District") to another school district in New Jersey (the "Byram District"). *Id*. at 235. After reviewing the student's last IEP from the Westwood District, the Byram District advised the parents that it would implement the student's last IEP in-district, rather than placing him at a private school. *Id*. The parents disagreed and commenced a due process proceeding in which they invoked the pendency/stay-put provision of the IDEA to require the new school district to pay for the student's placement in a private school. *Id*. The administrative law judge, district court, and Court of Appeals all held that the parents had incorrectly invoked the pendency/stay-put provision rather than the intrastate transfer provision, 20 U.S.C. §1414(d)(2)(C)(i)(I) – which is essentially identical to the interstate transfer provision at issue

Here, though the Hearing Officer cited to the interstate transfer provision in both the January 18, 2015 Memorandum and Order and the final November 20, 2015 decision, the interstate transfer provision was, ultimately, not applied. To the contrary, the Hearing Officer's decision in the "Interim Pendency Ruling" was clearly premised on the application of the pendency/stay-put provision, and not the interstate transfer provision, as evidenced by the numerous references to "pendency," "pendent," and "stay-put." As an example, the Hearing Officer writes that "this pendency determination is based solely on Student's current special education program and placement, which includes both day school and residential components." (A.R. Ex. 8, HO-1 at p. 5). The decision even appears to have been titled in the footer as the Hearing Officer's "Interim *Pendency* Ruling." (*Id*. at pp. 1-6) (emphasis added). The Hearing Officer also cites to and primarily relies upon two cases, neither of which involved a student who had voluntarily transferred from one school district to another.[9] To the contrary, both of these cases involved a student whose existing school district or LEA was either proposing a new in-district educational program placement for the student, or denying the parents' request for such a placement. Significantly, the Hearing Officer does not cite to, nor discuss, *Michael C.*, an opinion that addresses the identical circumstances in this case, that of a student who voluntarily transferred from a school district in one state to a new school district in another state.[10]

---

here. Relying on the fact that "J.F.'s parents unilaterally relocated [the student] from Westwood to Byram" and that "the purpose of the stay-put provision . . . [was] not implicated," *id*. at 237, the Court held that "the stay-put provision [was] inoperative and Byram [met] its obligation by complying with §1414(d)(2)(C)(i)(I)." *Id*. at 238. In so holding, the Third Circuit has held that the pendency/stay-put provision and its related principles do not apply to the situation where a student transfers from one school district to another.

[9] The Hearing Officer relies upon the following two cases: *Drinker by Drinker v. Colonial School Dist.*, 78 F.3d 859 (3d Cir. 1996), and *M.R. v. Ridley School Dist.*, 744 F.3d 112 (3d Cir. 2014).

[10] Notably, the Hearing Officer's decision was issued months before the Third Circuit issued its decision in *J.F.*, 629 F. App'x 235.

At most, it appears that the Hearing Officer effectively treated the pendency/stay-put provision and the interstate transfer provision as one and the same. Clearly, these provisions are not. *See Michael C.*, 202 F.3d 643; *J.F.*, 629 F. App'x 235; *Cinnaminson Township Bd. of Educ. v. K.L.*, 2016 WL 4212121 (D. N.J. Aug. 9, 2016). Having improperly applied the pendency/stay-put provision rather than the correct and applicable interstate transfer provision, the Hearing Officer's decision is erroneous as a matter of law. Therefore, this matter is remanded in its entirety to the Hearing Officer to determine whether, under the interstate transfer provision, the School District offered educational services "comparable to those provided for in the previously held IEP," *see J.F.*, 629 F. App'x at 238 (finding that under the transfer provision, the ALJ was required to determine whether the new school district offered the student "services comparable to those provided for in the" previous school district's last operative IEP),[11] and whether under the interstate transfer provision, 20 U.S.C. §1414(d)(2)(C)(i)(II), the School District was required to provide Student with a residential placement as part of his educational services.

Under the circumstances described herein, the School District was never given the opportunity to develop a Pennsylvania IEP, as contemplated by the interstate transfer provision, due in part to Student's unavailability in Pennsylvania for an evaluation and the underlying administrative proceedings, which ultimately resulted in a premature administrative decision on

---

[11] Before this Court, the parties have each made various arguments with respect to what exactly constituted the existing IEP at the time of Student's transfer to the School District, as well as arguments directed at the Hearing Officer's final decision as to FAPE. Because this Court remands this matter for a proper determination under the applicable interstate transfer provision, a determination that was not made by the Hearing Officer, it offers no opinion at this time as to these other issues.

Student's FAPE.[12]  Because the process by which the School District was to develop an IEP in order to provide Student with a FAPE was circumvented, the Hearing Officer's final determination as to whether the School District provided Student a FAPE was premature.

**CONCLUSION**

For the reasons stated herein, the West Chester Area School District's motion for judgment on the administrative record is granted, and Parents' motion for judgment on the administrative record is denied.  This matter is remanded to the Hearing Officer for further consideration consistent with this decision.  An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[12] Indeed, the Hearing Officer recognized as much in her final decision, writing "[t]hus, where a child with an existing IEP moves into another state, there must be an interim determination of how comparable services will be provided ***prior to completion of the IEP process in the new state***." (A.R. 2 at p. 13) (emphasis added).  As such, the Hearing Officer implicitly recognized the appropriate next step in the process, *i.e.*, the School District was to complete the IEP process.  In fact, despite her final decision on the merits against the School District, the Hearing Officer observed that the School District was actually in the process of developing an IEP for Student with Parents' participation at the time she issued her decision.  (*Id*. at p. 19).